IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Mark G. PIERQUET, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Mark G. PIERQUET, Respondent.

Supreme Court

*No. 2004AP2998–D. Decided October 25, 2005.*

2005 WI 147

(Also reported in 705 N.W.2d 90.)

¶ 1. PER CURIAM. We review a report and recommendation filed by referee Rose Marie Baron on April 11, 2005, incorporating Attorney Pierquet's no contest plea and stipulations executed by the parties, recommending that Attorney Mark G. Pierquet receive a public reprimand for professional misconduct and that the court impose certain conditions upon Attorney Pierquet's practice of law.

¶ 2. Having independently reviewed the record, we accept the referee's factual findings and recommendation upon stipulations. We agree that Attorney Pierquet's conduct violated the rules of professional conduct and we further agree that a public reprimand and the imposition of conditions is the appropriate discipline for Attorney Pierquet's misconduct. We also conclude that Attorney Pierquet should be required to pay the costs of the Office of Lawyer Regulation (OLR) proceeding, which total $810.72 as of April 28, 2005.

¶ 3. Attorney Pierquet was admitted to practice law in Wisconsin in September 2001. He has not previously been disciplined.

¶ 4. As the OLR complaint alleged and the referee subsequently found, the client in this matter, R.G., allegedly sustained injuries while undergoing treatment at a doctor's office in January 2000. In 2001 an attorney in Menasha referred R.G. to Attorney Pierquet and a colleague who would serve as his co-counsel.

¶ 5. Attorney Pierquet and his colleague met with R.G. and explained that they would jointly represent R.G. Attorney Pierquet would investigate and plead the case; his colleague was responsible for the trial.

¶ 6. R.G. agreed to retain Attorney Pierquet and his colleague on a contingent fee basis. Attorney Pierquet asserts that he reduced the contingent fee to writing, but was unable to produce a copy. R.G. does not recall signing a contingent fee agreement, but does recall that he asked Attorney Pierquet for a copy and did not receive one.

¶ 7. On July 9, 2002, Attorney Pierquet filed a complaint on behalf of R.G. in the Outagamie County Circuit Court. On January 9, 2003, opposing counsel wrote Attorney Pierquet, seeking dates to depose R.G.'s expert witnesses. Attorney Pierquet failed to respond to that letter.

¶ 8. On March 10, 2003, opposing counsel spoke with Attorney Pierquet and Pierquet agreed to provide the expert witnesses for depositions. On March 27, 2003, opposing counsel wrote Attorney Pierquet, again seeking deposition dates for the expert witnesses, and also seeking a stipulation to modify the scheduling order. Attorney Pierquet failed to respond to that letter.

¶ 9. Opposing counsel called Attorney Pierquet on April 7th, April 11th, and April 15, 2003, to inquire about the stipulation for modifying the scheduling order. Attorney Pierquet failed to return these calls.

¶ 10. On April 16, 2003, opposing counsel wrote to Attorney Pierquet requesting a response and informing Attorney Pierquet that failure to respond would result in a motion to the court. Attorney Pierquet did not respond.

¶ 11. On May 13, 2003, opposing counsel filed a motion to dismiss R.G.'s complaint, or in the alternative

to modify the scheduling order and compel discovery. The circuit court heard the motion on July 2, 2003. The court then limited R.G.'s witnesses, ordered R.G. to provide opposing counsel the theory of liability by July 14, 2003, and imposed costs of $400 on R.G. to compensate opposing counsel for the costs of bringing the motion.

¶ 12.  On July 2, 2003, opposing counsel spoke with Attorney Pierquet about dismissing the lawsuit. On July 9, 2003, opposing counsel sent Attorney Pierquet a stipulation and order for dismissal.

¶ 13.  Attorney Pierquet failed to provide opposing counsel the theory of liability by July 14, 2003, as ordered by the court.

¶ 14.  On August 8, 2003, without consulting his client, Attorney Pierquet signed a stipulation to dismiss R.G.'s case with prejudice. On August 27, 2003, based upon this stipulation, the circuit court dismissed the lawsuit. Attorney Pierquet did not inform either R.G. or his own colleague that he had stipulated to dismissal of the case.

¶ 15.  In September 2003 Attorney Pierquet's colleague received notice of a trial date for R.G.'s case. He informed Attorney Pierquet that he required more time to prepare for trial. Attorney Pierquet then informed his colleague that due to the lack of notice, the court had removed the case from the calendar and would reschedule it later. This information was false, as Attorney Pierquet knew.

¶ 16.  On or about September 9, 2003, R.G. called Attorney Pierquet to ask what he should wear to court. Attorney Pierquet did not inform R.G. that he had stipulated to dismissal, and instead told R.G. that the case was progressing smoothly toward conclusion.

¶ 17. On or about October 8, 2003, R.G. contacted Attorney Pierquet, stating that he had learned that his case had been dismissed. He sought an explanation from Attorney Pierquet. Attorney Pierquet falsely stated to R.G. that he had not signed a stipulation dismissing the case.

¶ 18. At this point Attorney Pierquet's colleague conducted a case search and confirmed that a stipulation for dismissal had been entered in R.G.'s case. He confronted Attorney Pierquet, who initially gave a noncommittal response, but subsequently admitted signing the stipulation.

¶ 19. The disciplinary complaint filed against Attorney Pierquet alleged five counts of misconduct. Eventually, Attorney Pierquet agreed to plead no contest to these five counts. In March 2005 the parties executed a stipulation and no contest plea agreeing, with minor clarifications, that the factual allegations set forth in the complaint were accurate. The referee thus concluded that there was an adequate factual basis in the record to show that Attorney Pierquet had committed misconduct in respect to each of the five allegations set forth by the OLR. Subsequently, the parties entered a second stipulation regarding discipline.

■■

¶ 20. The stipulation stated, and the referee concluded that by failing to reduce his contingent fee agreement with R.G. to writing, Attorney Pierquet violated SCR 20:1.5(c).[1]

---

[1] SCR 20:1.5(c) provides:

A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A

■

¶ 21. In addition, the parties stipulated and the referee concluded that by failing to properly prosecute R.G.'s lawsuit, by failing to respond to discovery requests, and by failing to comply with a court-ordered deadline, Attorney Pierquet failed to provide competent representation in violation of SCR 20:1.1,[2] and also failed to act with reasonable diligence and promptness in representing a client in violation of SCR 20:1.3.[3]

■

¶ 22. In addition, by stipulating to the dismissal of R.G.'s lawsuit with prejudice without consulting or informing his client, the parties stipulated and the referee concluded that Attorney Pierquet failed to abide by a client's decisions concerning the objectives of a representation and consult with the client as to the means by which they are to be pursued in violation of SCR 20:1.2(a).[4]

---

contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and if there is a recovery, showing the remittance to the client and the method of its determination.

[2] SCR 20:1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[3] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[4] SCR 20:1.2(a) provides: Scope of representation.

¶ 23.   The stipulation provided and the referee also concluded that by stating to R.G. that the case was progressing, and by denying that he had signed a stipulation for dismissal when in fact he had signed a stipulation for dismissal and the case had been dismissed, Attorney Pierquet engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of SCR 20:8.4(c).[5]

¶ 24.   Finally, the parties stipulated and the referee concluded that by failing to inform his co-counsel that he had dismissed the case and by misleading co-counsel into believing the case was pending and that the trial would be rescheduled, Attorney Pierquet engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of SCR 20:8.4(c).

¶ 25.   The parties eventually reached a second stipulation providing that Attorney Pierquet would receive a public reprimand for his misconduct and that

A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall inform a client of all offers of settlement and abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

[5] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

certain conditions would be imposed on Attorney Pierquet's practice of law. Specifically, the parties stipulated that:

> For a period of two years following the date of the Supreme Court's final order, Pierquet shall continue medical treatment, and shall comply with all treatment recommendations; and

> Six months after the date of the Supreme Court's final order, and every six months thereafter until two years after the Court's order, Pierquet shall provide full medical treatment records to OLR.

¶ 26. The stipulation sets forth the medical reasons for these conditions and the referee accepted the stipulation as part of her recommendation regarding discipline. Based on our review of the record, we agree that a public reprimand with the imposition of the conditions described herein is appropriate in this matter. We further conclude that Attorney Pierquet should be required to pay the costs of this proceeding.

¶ 27. IT IS ORDERED that Attorney Mark G. Pierquet is publicly reprimanded for professional misconduct.

¶ 28. IT IS FURTHER ORDERED that the following conditions are imposed upon Attorney Pierquet's license to practice law in Wisconsin:

> For a period of two years following the date of the Supreme Court's final order, [Attorney] Pierquet shall continue medical treatment, and shall comply with all treatment recommendations; and

> Six months after the date of the Supreme Court's final order, and every six months thereafter until two years after the Court's order, [Attorney] Pierquet shall provide full medical treatment records to [the] OLR.

95

¶ 29.  IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Mark G. Pierquet shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of an inability to pay the costs within that time, the license of Attorney Mark G. Pierquet to practice law in Wisconsin shall be suspended until further order of the court.